1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

STEVEN ROBERT CERNIGLIA,                )    1:06-CV-01767 OWW JMD HC
                                        )
          Petitioner,                   )    FINDINGS AND RECOMMENDATIONS
                                        )    REGARDING PETITION FOR WRIT OF
     v.                                 )    HABEAS CORPUS
                                        )
STEVEN MAYBERG,                         )
                                        )
          Respondent.                   )    OBJECTIONS DUE WITHIN THIRTY (30)
_____)    DAYS

17      Petitioners are civilly committed detainees proceeding *pro se* with a petition for writ of

18 habeas corpus pursuant to 28 U.S.C. § 2254.

19                              **PROCEDURAL HISTORY**

20      Petitioners[1] are civil detainees involuntarily committed to Coalinga State Hospital, pursuant

21 to California's Sexually Violent Predator Act, California Welfare & Institution Code § 6600

22 ("SVPA").  (Pet. Mem. P. & A. at 2.)

23      On April 4, 2006, Petitioners filed a petition for writ of habeas corpus with the Fresno

24 County Superior Court.  (Pet. Mem. P. & A. at 3).  The Superior Court issued a reasoned decision

25 denying the petition on April 21, 2006.  (Pet. Ex. A.)

26      On July 10, 2006, Petitioners filed a petition for writ of habeas corpus to the California Court

27

28      [1]While the Court denied class action certification, as discussed *infra*, the Court permitted the petition to proceed with
the identified Petitioners in the class action application.  Thus, the petition concerns multiple petitioners.

1    of Appeal, Fifth Appellate District.  (Pet. Mem. P. & A. at 4.)  The California Court of Appeal

2    denied the petition on August 3, 2006.  (Pet. Ex. B.)

3            On August 21, 2006, Petitioners filed a petition for writ of habeas corpus with the California

4    Supreme Court, which the State's high court summarily denied on October 11, 2006.  (Pet. Mem. P.

5    & A. at 4; Pet. Ex. C.)

6            On November 15, 2006, Petitioners filed the instant federal petition for writ of habeas corpus.

7            On July 26, 2007, Respondent filed an answer to the petition, alleging that the named

8    Petitioner had failed to allege sufficient facts to establish that he had suffered any violations of his

9    constitutional rights.

10            On August 24, 2007, Petitioner filed a reply to the answer, arguing that Respondent's answer

11    was erroneous as the Court had yet to rule on Petitioners' application for class action status.

12            On October 1, 2008, the Court found that while Petitioner had mentioned an application for

13    class action status, Petitioners had not in fact submitted such an application to the Court.  (Court

14    Doc. 20.)  The Court thus ordered Petitioners to submit the application for class action status, an

15    order which Petitioners complied with on October 20, 2008.  (Court. Docs. 20, 21.)  After having

16    reviewed the merits of the application, the Court denied class action status on October 30, 2008, and

17    ordered Respondent to submit a supplemental answer addressing the substantive merits of the

18    petition as they pertained to the particular Petitioners identified in the petition.  (Court. Doc. 24.)

19            Respondent submitted a supplemental answer on December 22, 2008, (Court. Doc. 30), to

20    which Petitioner submitted a reply on January 16, 2009 (Court. Doc. 32.)

21                                    **FACTUAL BACKGROUND**

22            The various Petitioners allege that CDCR officers were used to transport them to and from

23    medical appointments and that CDCR officers operate the visitor registration desk.  Petitioners

24    Elijah Lopez, Robert Clark, Terry Troglin and Ruben Seja complain of the use of the CDCR to

25    transport them to and from medical appointments.  Petitioners Steven Cerniglia, Khanh Nguyen,

26    Douglas Gaines, Harold Derry, and Randy Daniels allege that the CDCR operation of the visitor

27

28

1  registration desk resulted in either delays or denials of visitations by family and friends.[2]

2  **DISCUSSION**

3  **I.**   **Jurisdiction**

4       A person in custody pursuant to the judgment of a state court may petition a district court for

5  relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or

6  treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

7  U.S. 362, 375 n.7 (2000).  Petitioners asserts that they suffered violations of their rights as

8  guaranteed by the United States Constitution during their civil detainment at Coalinga State Hospital,

9  which is located in Fresno County.  As Fresno County falls within this judicial district, 28 U.S.C. §

10  84(b), the Court has jurisdiction over Petitioners' application for writ of habeas corpus.  *See* 28

11  U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the

12  district court where the petitioner is currently in custody or the district court in which a State court

13  convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

14  **II.**   **ADEPA Standard of Review**

15       On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

16  1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

17  enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499

18  (9th Cir. 1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other*

19  *grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's

20  enactment)).  The instant petition was filed in 2008 and is consequently governed by the provisions

21  of the AEDPA.  *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted

22  only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or

23  involved an unreasonable application of, clearly established Federal law, as determined by the

24  Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28

25

26       [2]Declarations relating to claims by David Harney, James Wright, Thomas Hughes, Cornelius Boyle, and John
27  Semeneck were lodged with this Court by Petitioner and the declarants.  However, neither Mr. Harney, Mr. Wright, Mr,
   Hughes, Mr. Boyle, nor Mr. Semeneck are listed among the applicants who declared themselves as petitioners in this case.
28  (Court Doc. 21).  As the Court denied class certification, the Court will not accept additional petitioners for this case.
   Consequently, the Court does not find their declaration to be relevant to its adjudication of Petitioners' claims.

1  U.S.C. § 2254(d)(1)), *overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555

2  (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

3          Title 28 of the United States Code, section 2254 remains the exclusive vehicle for

4  Petitioner's habeas petition as Petitioner is in custody of the California Department of Corrections

5  and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*,

6  461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at

7  555.  As a threshold matter, this Court must "first decide what constitutes 'clearly established

8  Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71

9  (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this

10  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of

11  the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412).  "In other

12  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

13  principles set forth by the Supreme Court at the time the state court renders its decision." *Id*.

14  Finally, this Court must consider whether the state court's decision was "contrary to, or involved an

15  unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28

16  U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if

17  the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

18  of law or if the state court decides a case differently than [the] Court has on a set of materially

19  indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the

20  'unreasonable application clause,' a federal habeas court may grant the writ if the state court

21  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

22  that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal court may

23  not issue the writ simply because the court concludes in its independent judgment that the relevant

24  state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

25  application must also be unreasonable." *Id*. at 411.  A federal habeas court making the "unreasonable

26  application" inquiry should ask whether the State court's application of clearly established federal

27  law was "objectively unreasonable." *Id*. at 409.

28  \\\

1    Petitioner bears the burden of establishing that the state court's decision is contrary to or

2    involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*,

3    94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,

4    Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

5    decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While

6    *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents

7    need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v.

8    Ducharme*, 200 F.3d 597, 600-601 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it

9    can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit

10   precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never

11   relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of

12   determining whether a particular state court decision is an 'unreasonable application' of Supreme

13   Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the

14   AEDPA requires that the Court give considerable deference to state court decisions. The state

15   court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is

16   bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir.

17   2002).

18   The initial step in applying AEDPA's standards is to "identify the state court decision that is

19   appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more

20   than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

21   reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that

22   later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

23   ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained

24   state court decisions to the last reasoned decision to determine whether that decision was contrary to

25   or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107,

26   1112-1113 (9th Cir. 2003). Here, the Fresno County Superior Court, the California Court of Appeal,

27   and the California Supreme Court all adjudicated Petitioners' claims submitted to the State court

28   through petitions for writ of habeas corpus. As the California Court of Appeal and the California

1   Supreme Court summarily denied Petitioners' claims,[3] the Court looks through those decisions to the

2   last reasoned decision; namely, that of the Fresno County Superior Court.  *See Ylst v. Nunnemaker*,

3   501 U.S. at 804.

4   **III.     Review of Petitioner's Claims**

5           The petition for writ of habeas corpus contains two grounds for relief, contending that

6   Petitioners' constitutional rights, under the Fourth Amendment and the Equal Protection Clause,

7   were violated by the use of CDCR officers to transport Petitioners to and from medical appointments

8   outside Coalinga State Hospital to staff the visitor registration desk.

9           ***A.     Fourth Amendment Claim***

10          Petitioners contends that their placement into the custody of the CDCR for transport to and

11  from medical appointments violates their Fourth and Fourteenth Amendment Rights.[4]  (Pet. Mem. P.

12  & A. at 8-10.)

13          The Fresno County Superior Court rejected this argument finding that the evidence did not

14  establish any unconstitutional conduct that warranted habeas relief.  The court explicitly rejected the

15  argument that the use of the CDCR to transport and operate the visitor registration desk made

16  Petitioners' civil commitment punitive as there was no evidence to suggest that the purpose of such

17  activities were punitive.  (Pet. Ex. A at 1-2.)  The Superior Court noted that the use of CDCR

18  officers to transport civil detainees was reasonably necessary considering the dangerous nature of

19  those civilly committed as a sexually dangerous predator.  (Id. at 2.)  Additionally, the Superior

20  Court found that nothing in the statute expressly forbids the CDCR from transporting such

21

22          [3]The California Court of Appeal merely stated that, "The petition for writ of habeas corpus filed in this court on July
23  10, 2006, is denied.  To the extent the petition purports ot raise claims of physical abuse by California Department of
    Corrections and Rehabilitation employees, those detainees who are subject to the alleged abuse have the legal remedy of filing
24  their own administrative grievances and, if unsuccessful, filing their own petition for writ of habeas corpus."  (Pet. Ex. B).
    The Court finds the decision to be ambiguous as to the reasons for denying the writ and therefore looks through the opinion.

25          [4]Petitioners' contention that their Fourteenth Amendment rights have been violated does not contain any specific
26  allegation related to the Fourteenth Amendment.  Rather, the only allegation is that Petitioners have been subjected to
    unreasonable search and seizure.  Thus, the Court presumes that Petitioners' mention of the Fourteenth Amendment is due
27  exclusively to the incorporation of the Fourth Amendment to the states via the Fourteenth Amendment.  *See Stoot v. City of
    Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979) in noting that the Fourth
28  Amendment, by virtue of its incorporation into the Fourteenth Amendment, requires the States to provide certain
    constitutional safeguards for pretrial restrain of liberty).

1  individuals or from staffing the visitor registration desk. The Superior Court concluded that such

2  conduct does not materially alter the Petitioners' treatment or transform the civil commitment into

3  punishment. (Id. at 3.)

4      The Court does not find this to be an objectively unreasonable application of clearly

5  established federal law. The majority of Petitioners' argument is devoted to discussing California

6  statues authorizing the Department of Mental Health to run Coalinga State Hospital. Petitioner

7  contends that these statutes vesting authoring with the Department of Mental Health do not authorize

8  the involvement of the CDCR. Alleged errors in the application of state law are not cognizable in

9  federal habeas corpus. *See Hubbart v. Knapp*, 379 F.3d 773, 779-80 (9th Cir. 2004); *see also*

10  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (holding that a petitioner may not "transform a

11  state-law issue into a federal one merely by asserting a violation of due process"). More importantly,

12  a federal habeas court is bound by a state court's interpretation of its law; thus, the Court must accept

13  the Superior Court's finding that California's statutes do not expressly prohibit the involvement of

14  the CDCR in transporting civil detainees and staffing the visitor registration desk. *See Bradshaw v.*

15  *Richey*, 546 U.S. 74, 76 (2005) (per curiam) (stating that "a state court's interpretation of state law,

16  including one announced on direct appeal of the challenged conviction, binds a federal court sitting

17  in habeas corpus"); *see also Musladin v. Lamarque*, 555 F.3d 830, 838 n.6 (9th Cir.2009) (finding

18  that habeas court must presume that state courts know and follow the law and that state-court

19  decisions be given the benefit of the doubt under AEDPA's deferential standards).

20      Petitioners's argument regarding the Fourth Amendment fails as Petitioners do not complain

21  about being in custody; rather, Petitioners' complaint lies in the identity of their custodian.

22  Petitioners' citation to *Youngberg v. Romero*, 457 U.S. 307 (1982) and *Greenholtz v. Nebraska*

23  *Penal Inmates*, 442 U.S. 1 (1979), is erroneous as *Youngberg* and *Greenholtz* both challenged their

24  liberty interest to be free from bodily restraint. (Pet. Mem. P. & A. at 15.) Here, Petitioners do not

25  contend they should be free from bodily restraint, but rather complain that the wrong state agency

26  holds them in restraint. Petitioner fails to cite any clearly established Supreme Court precedent that

27  would support the proposition that a temporary change in custodians violates a person's Fourth

28  Amendment rights. Contrary to Petitioners' assertions otherwise, the use of the CDCR to implement

1  the statute in a limited function does not alter their civil commitment status as the Supreme Court

2  has noted that "[t]he particular features of confinement may affect how a confinement scheme is

3  evaluated to determine whether it is civil rather than punitive, but it remains no less true that the

4  query must be answered definitively. The civil nature of a confinement scheme cannot be altered

5  based merely on vagaries in the implementation of the authorizing statute." *Seling v. Young*, 531

6  U.S. 250, 263 (2001). Petitioners do not contend that the SVPA is not civil in nature; thus, the mere

7  fact that the CDCR officers are used to transport Petitioners to and from medical appointments does

8  not transform Petitioners' civil commitment into punishment. The Court finds the same analysis

9  applicable to Petitioners' claim that the CDCR staffing of the visitor registration desk constitutes a

10 violation of their Fourth Amendment rights. Consequently, Petitioners are not entitled to habeas

11 corpus relief on this ground.[5]

12           **B.    *Equal Protection Claim***

13          Petitioners contends that the use of CDCR officers to transport them and to staff the visitor

14 registration desk constitutes a violation of their Equal Protection rights as similarly situated civil

15 detainees at Atascadero State Hospital are not subject to the same conditions.

16          The Court initially notes that none of the State courts provided a reasoned decision for

17 denying Petitioners' Equal Protection claims. As the Court has "no basis other than the record for

18 knowing whether the state court correctly identified the governing legal principle or was extending

19 the principle into a new context," an independent review of the record is required to ascertain

20 whether the state court decision was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976,

21 981-82 (9th Cir. 2000).

22           Petitioners do not allege a denial of equal protection based on membership in a suspect class

23 and as the Court has previously found that Petitioner's Fourth Amendment rights are not implicated

24 by the use of the CDCR officers, Petitioners' equal protection claim is not entitled to strict scrutiny.

25 *See United States v. Hancock*, 231 F.3d 557, 565 (9th Cir. 2000) (noting that strict scrutiny standard

26

27          [5]Petitioner's citation to *Hydrick v. Hunter*, 500 F.3d 978, 992-993 (9th Cir. 2007), *judgement vacated*, 129 S.Ct.
28 2431 (2009), *Jones v. Blanas*, 393 F.3d 918, 931-935 (9th Cir. 2004) is unavailing as both cases pertain to civil rights actions and did not concern the substantive merits of those plaintiff's constitutional claims.

is only used for suspect classes or burdens on fundamental rights).  Thus, Petitioners' claim that they are being treated differently than civil detainees housed at Atascadero State Hospital is subject only to a rational basis test.  *See Rodriguez v. Cook*, 169 F.3d 1176, 1179-80 (9th Cir.1999) (applying rational basis test to equal protection challenge where there was no suspect class or fundamental interest at stake); *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996), in stating that, "[i]f a legislative classification or distinction 'neither burdens a fundamental right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end").  Analyzing the claim through a rational basis test, the Court finds that Petitioners' Equal Protection claim must be dismissed as there exists a rational basis for the State's actions.

While the Superior Court did not directly address Petitioners' Equal Protection Claim, the Superior Court did articulate a rational basis for using CDCR officers to transport civil detainees involuntarily committed under the Sexual Violent Predator Act, noting that:

> The Sexual Violent Predator Act "is aimed at protecting society from, and providing treatment for, that 'small but extremely dangerous group of sexually violent predators' who have diagnosable mental disorders identified while they are incarcerated for designated violent sex crimes, and who are determined to be unsafe and, if released, to represent a danger to others through acts of sexual violence." *Garcetti v. Superior Court*, (2000) 85 Cal.App.4th 1113.
> Petitioner does not contest the dangerous nature of one committed as a sexually dangerous predator.  Considering the danger such individuals pose to society in general, transporting such individuals within the custody of the California Department of Corrections (CDC) would appear reasonably necessary to protect the public in general.

(Pet. Ex. A at 2-3.)

The Court finds the above explanation to be a rational basis for the use of CDCR officers to transport civil detainees to and from their medical appointment at Coalinga State Hospital.  More importantly, Petitioners have failed to establish that there does not exist a rational basis for the use of CDCR officers in the complained of functions.  Additionally, the Court can discern several additional reasons for the use of CDCR officers at Coalinga as opposed to Atascadero, including the the proximity of Coalinga State Hospital to Pleasant Valley State Prison.  Such proximity would make the use of CDCR officers more readily available to help transport and staff Coalinga State Hospital as opposed to Atascadero.

1    Lastly, the Court finds that dismissal of this claim is required as allegations in the petition

2   regarding the conditions of confinement, namely the restrictions on visitations, are not the proper

3   subject of a federal habeas petition. *See Nelson v. Campbell*, 541 U.S. 637, 643-44 (2004) (suits

4   challenging conditions of confinement are appropriately brought as civil rights actions, while those

5   challenging the fact or duration of confinement are properly brought under habeas petition); *see*

6   *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (civil rights action is proper method of challenging

7   conditions of confinement); *Crawford v. Bell*, 599 F.2d 890, 891-92 & n. 1 (9th Cir.1979) (affirming

8   dismissal of habeas petition as a challenge to terms and conditions of confinement is must be brought

9   in a civil rights complaint).  As noted by the Ninth Circuit Cour of Appeals, "habeas jurisdiction is

10  absent, and a 42 U.S.C. § 1983 action proper, where a successful challenge to a prison condition will

11  not necessarily shorten the prisoner's sentence."  *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir.

12  2003).  As succintly stated by the Supreme Court,"[t]he essence of habeas corpus is an attack by a

13  person in custody upon the legality of that custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484, 498,

14  (1973).  A review of similar cases reveal that the more appropriate avenue for Petitioner to seek

15  relief is a civil rights complaint pursuant to 42 U.S.C. § 1983.  *See Allen v. Mayberg*, 2010 WL

16  500467, *4-5 (E.D. Cal. 2010) (finding a cognizable equal protection claim exists in civil rights

17  actions for claim is the prohibition against visits from relatives under the age of 18); *see also McNeal*

18  *v. Mayberg*, 2008 WL 5114650, * 1-2 (E.D. Cal. 2008) (cognizable civil rights complaint pertaining

19  to violations of Fourteenth Amendment and Equal Protection pertaining to visitation restrictions).

20  Thus, the Court finds that Petitioners' Equal Protection claim should be dismissed.

21                              **RECOMMENDATION**

22    Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

23  DENIED WITH PREJUDICE in part and DISMISSED in part.  The Court further RECOMMENDS

24  the Clerk of Court be DIRECTED to enter judgment for Respondent.

25    This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United

26  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of

27  the Local Rules of Practice for the United States District Court, Eastern District of California.

28  Within thirty (30) days after being served with a copy, any party may file written objections with the

U.S. District Court
E. D. California

court and serve a copy on all parties.  Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.

The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:   June 14, 2010**                          **/s/ John M. Dixon**
                                          UNITED STATES MAGISTRATE JUDGE